**ALLSTATE INSURANCE COMPANY,**
Plaintiff,

v.

**Jared JOHNSTON, Bruce Johnston, and Kathy Johnston, co-guardians of Jared Johnston and co-conservators of the Estate of Jared Johnston, Defendants.**

No. CIV.A. 04–2363–GTV.

United States District Court,
D. Kansas.

Oct. 7, 2004.

Paul P. Hasty, Jr., Wallace, Saunders, Austin, Brown & Enochs, Chtd., Overland Park, KS, for Plaintiff.

Michelle Reinert Mahieu, David J. Rebein, Rebein Bangerter, PA, Dodge City, KS, for Defendants.

### MEMORANDUM AND ORDER

VANBEBBER, Senior District Judge.

Plaintiff Allstate Insurance Company brings this interpleader and declaratory judgment action against Defendants Jared Johnston, Bruce Johnston, and Kathy Johnston.[1] Plaintiff seeks resolution of uninsured motorist claims Defendants filed against Plaintiff arising out of an automobile accident. This action is before the court on Plaintiff's motion for summary judgment (Doc. 13). Specifically, Plaintiff requests a determination as to whether the personal umbrella policy Defendants purchased from Plaintiff provides for uninsured motorist coverage. For the following reasons, the court holds that the umbrella policy provides only excess liability coverage, and does not provide uninsured motorist coverage.

### I.  FACTUAL BACKGROUND

The facts in this case are not controverted. On April 6, 2004, twenty-two year old Defendant Jared Johnston, the son of Defendants Bruce and Kathy Johnston, was severely injured in a one vehicle accident in the state of Florida.[2] At the time, Jared Johnston was riding in an automobile operated by Steven Ritter, an uninsured motorist. As a result of the injuries Jared Johnston suffered in the accident, Defendants Bruce and Kathy Johnston filed claims with Allstate under their automobile insurance policy and their personal umbrella policy.

In response to those claims, Plaintiff has made payments to Jared Johnston's health

---

1. Plaintiff is an Illinois corporation with its principal place of business in Illinois. Defendants are all citizens of the state of Kansas. The amount in controversy exceeds $75,000. Jurisdiction is thus predicated on diversity of citizenship, 28 U.S.C. § 1332.

2. Due to the nature and severity of Jared Johnston's injuries, Bruce and Kathy Johnston petitioned, and received appointment from, the District Court of Ford County as co-guardians of Jared Johnston and co-conservators of the Estate of Jared Johnston, an impaired adult.

care providers for P.I.P. medical and rehabilitation benefits under the parents' automobile insurance policy. Plaintiff has also deposited $100,000 in the registry of the Court. That deposit represents the amount of the automobile insurance policy's limit for uninsured motorist benefits. Plaintiff, however, denies that Defendants' personal umbrella policy provides uninsured motorist coverage.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Lack of a genuine issue of material fact means that the evidence is such that no reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* The court must consider the record in the light most favorable to the nonmoving party. *Bee v. Greaves*, 744 F.2d 1387, 1396 (10th Cir.1984).

## III. DISCUSSION

The parties agree that Kansas law applies to the insurance policy at issue. The parties further agree that Kansas law does not require Plaintiff to provide uninsured motorist coverage in the personal umbrella policy.[3] Thus, the sole issue before the court is whether the terms of Plaintiff's personal umbrella policy do in fact provide uninsured motorist coverage to Defendants.

The "[i]nterpretation of an insurance policy is a question of law." *Atchison, Topeka & Santa Fe Ry. Co. v. Stonewall Ins. Co.*, 275 Kan. 698, 71 P.3d 1097, 1120 (2003). A court must construe an insurance policy to carry out the intention of the parties. *Colfax v. Johnson*, 270 Kan. 7, 11 P.3d 1171, 1175 (2000) (citing *Brumley v. Lee*, 265 Kan. 810, 963 P.2d 1224, 1226 (1998)). Absent ambiguity, the court will enforce the policy as written. *Stonewall Ins. Co.*, 71 P.3d at 1120. "Where the terms of a policy of insurance

---

**3.** The Kansas uninsured motorist statute, K.S.A. 40–284(a), provides "that no automobile liability insurance policy may be sold in Kansas unless it contains a provision for uninsured motorist coverage equal to its liability coverage." *Degollado v. Gallegos*, 260 Kan. 169, 917 P.2d 823, 825 (1996). The statute, however, explicitly excludes excess and umbrella policies from its requirements. K.S.A. 40–284(a).

are ambiguous or uncertain, conflicting, or susceptible of more than one construction, the construction most favorable to the insured must prevail." *Catholic Diocese of Dodge City v. Raymer*, 251 Kan. 689, 840 P.2d 456, 459 (1992). "The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean." *Colfax*, 11 P.3d at 1175 (citing *Associated Wholesale Grocers, Inc. v. Americold Corp.*, 261 Kan. 806, 934 P.2d 65, 78 (1997)). "All pertinent provisions of an insurance policy must be considered together, rather than in isolation, and given effect." *Stonewall Ins. Co.*, 71 P.3d at 1120 (citing *Brumley*, 963 P.2d at 1227).

█ Plaintiff contends that the personal umbrella policy at issue only provides excess liability insurance. Plaintiff's position is that the policy covers Defendants when they are legally obligated to pay damages to a third party. Noticeably absent, Plaintiff asserts, is a provision indemnifying Defendants when a third party is legally obligated to pay damages to them. Plaintiff cites to portions of the umbrella policy to support its position. First, under the section entitled "Excess Liability Insurance," Plaintiff directs the court to the policy's main coverage and payment provisions:

> This policy provides only excess insurance. It does not contribute with any Required Underlying Insurance or other insurance which applies to an occurrence. It also is excess to any Retained Limit an insured assumes.
>
> Coverage—When We Pay
>
> Allstate will pay when an insured becomes legally obligated to pay for personal injury or property damage caused by an occurrence.
>
> . . .
>
> Amounts We Pay

> Allstate will pay only those amounts within our limit of liability which exceed the sum of:
>
> 1. The limits of liability of any Required Underlying Insurance which apply to the occurrence; plus
>
> 2. The limits of any other liability insurance available to an insured which apply to the occurrence.
>
> . . .
>
> If no other insurance is required and no other insurance applies to the occurrence, we will pay only those amounts which exceed the Retained Limit.

Plaintiff also notes that because the umbrella policy provides "excess" liability coverage, the policy requires an insured to maintain underlying *liability* coverage "if that [insured] has the *liability* exposure listed." (emphasis added). Among the list of "Required Underlying Insurance," Plaintiff points out that automobile liability coverage of $100,000/$300,000 for bodily injury and $50,000 for property damage, or a single limit of $300,000 is required. Stated simply, Plaintiff asserts that the umbrella policy does not mention uninsured motorist coverage because the policy does not provide it.

Defendants claim that the umbrella policy provides uninsured motorist coverage. Defendants suggest that Plaintiff could have used clear and unambiguous language expressing its intention to exclude uninsured motorist coverage from the umbrella policy. Because Plaintiff failed to do so, Defendants request the court to interpret the policy in their favor. Furthermore, Defendants maintain that the umbrella policy does not exclude uninsured motorist coverage simply because the policy does not require them to maintain underlying uninsured motorist insurance. Defendants maintain that the "Required Underlying Insurance" section specifies the minimum

coverage the insured is required to maintain with respect to certain categories of claims. In particular, they argue that "[t]he umbrella policy expressly contemplates that certain claims will be covered by the umbrella policy (e.g., primary coverage) even though they are not covered by an underlying required insurance policy." Defendants support this statement by citing a portion of the umbrella policy, quoted above, that states: "If no other insurance is required and no other insurance applies to the occurrence, we will pay only those amounts which exceed the Retained Limit." The court declines to rewrite the policy in Defendants' favor.

As a starting point, the court notes the inherent differences between liability insurance and uninsured motorist insurance. "Liability insurance is third-party insurance and designed to protect persons injured by the insured, not to protect the insured. In contrast, uninsured motorist coverage is first-party insurance, designed to protect the insured." *Ball v. Midwestern Ins. Co.*, 250 Kan. 738, 829 P.2d 897, 900 (1992). The Kansas Supreme Court has also observed:

> [T]he purpose of ... uninsured motorist law is to recompense innocent persons who are damaged through the wrongful act of uninsured motorists who are not financially responsible. Uninsured motorist coverage is not actually liability insurance, but more closely resembles limited accident insurance. It insures against losses occasioned by a limited group of tort-feasors.

*Forrester v. State Farm Mut. Auto. Ins. Co.*, 213 Kan. 442, 517 P.2d 173, 178 (1973) (internal citation omitted); *see also Hammerman v. Southwestern Ins. Group*, 1 Kan.App.2d 445, 571 P.2d 1, 4 (1977) ("It has been said uninsured motorist insurance is in the nature of a contract of indemnity as opposed to liability insurance.").

The unambiguous language from the umbrella policy compels only one conclusion: the policy provides excess liability coverage, not uninsured motorist protection. The policy's coverage clearly states that the insurer "will pay when an insured becomes *legally obligated to pay* for personal injury or property damage" caused by the insured (emphasis added). The umbrella policy's purpose is not to benefit Defendants due to losses sustained from uninsured motorists, but to provide additional protection for Defendants against the claims of third parties. The rest of the policy is written with that purpose in mind. For example, the policy contains provisions to defend the insured in lawsuits brought by third parties, and excludes coverage for intentionally harmful acts or omissions of an insured.

Defendants appear to misunderstand Plaintiff's position concerning the policy's "Required Underlying Insurance" section. Plaintiff is not arguing that uninsured motorist coverage is excluded because the policy fails to list uninsured motorist coverage under that section. Plaintiff's brief noted that automobile liability coverage is required underlying insurance to bolster its stance that this policy involves liability insurance, not uninsured motorist insurance. It is true, as Defendants contend, that the policy contemplates claims that will be covered by the umbrella policy for which no underlying required insurance is required. Under these circumstances, an insured is required to pay an amount of damages or "retained limit" that is set by state law. However, an interpretation that would open the door for uninsured motorist claims would distort the purpose of the policy.

The court also rejects Defendants' request to construe the umbrella policy in

their favor because Plaintiff failed to expressly exclude uninsured motorist claims from its policy. Plaintiff did not need to do so in view of the numerous terms limiting the umbrella policy to excess liability coverage. The umbrella policy's exclusions become relevant when interpreting the insurance policy only when the policy provides coverage in the first place. The court will not construe the policy to provide uninsured motorist coverage where the language of the insurance policy is unambiguous and no mention of uninsured motorist coverage is made anywhere in the policy. To rule otherwise would not carry out the intentions of the parties.

IT IS, THEREFORE, BY THE COURT ORDERED that Plaintiff's motion for summary judgment (Doc. 13) is granted. The personal umbrella policy does not provide uninsured motorist coverage.

Copies of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**