IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

---

DATE STREET CAPITAL, LLC, *Plaintiff/Appellant*,

*v.*

FARMERS INSURANCE COMPANY OF ARIZONA, *Defendant/Appellee*.

No. 1 CA-CV 24-0534

FILED 05-06-2025

---

Appeal from the Superior Court in Maricopa County
No. CV2022-009830
The Honorable Jennifer C. Ryan-Touhill, Judge

**AFFIRMED**

---

COUNSEL

Law Offices of Adam B. Decker, PLLC, Tempe
By Adam B. Decker
*Counsel for Plaintiff/Appellant*

Jones Skelton & Hochuli PLC, Phoenix
By Ashley E. Caballero-Daltrey, Joshua M. Snell, Justin M. Ackerman
*Counsel for Defendant/Appellee*

---

**OPINION**

Judge Andrew M. Jacobs delivered the opinion of the Court, in which Presiding Judge Cynthia J. Bailey and Vice Chief Judge Randall M. Howe joined.

---

**J A C O B S**, Judge:

¶1        Plaintiff Date Street Capital, LLC ("Date Street") challenges the superior court's dismissal of its complaint against defendant Farmers Insurance Company of Arizona ("Farmers") under Arizona Rule of Civil Procedure ("Rule") 12(b)(6) for failure to state a claim upon which relief can be granted.  For the following reasons, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶2        In March 2019, Jason Kentzel purchased a 2008 Dodge Challenger, financed by Date Street.  As part of the purchase agreement, Kentzel committed to obtain insurance coverage for the Dodge that would identify Date Street as a lienholder or loss payee.

¶3        Kentzel later obtained insurance through Farmers (the "Policy"), and the declarations page of the Policy identified Date Street as a lienholder.   The declarations page also included Kentzel as a named insured.  The Policy provided that, in the event of a loss, Farmers "may settle any loss with [Kentzel], the owner or the lienholder of the property shown on the Declarations Page."[1]   The Policy further stated that "[i]f a lienholder is named in this policy, any notices we give to the lienholder may be mailed or delivered."  Finally, the Policy provided:

> It is agreed that at our option, any payment for damage to the car listed in this policy shall be paid as interest may appear to the named insured and the lienholder shown on the Declarations Page, or through the repair of the damaged car. When we provide payment to the lienholder, the payment will be the lowest of the actual cash value of your insured car or the existing loan balance, whichever is less.  Any change in title or ownership of the car, or error in its description shall not void coverage afforded to the lienholder.

(Emphasis removed).

¶4        After the Dodge was damaged, Kentzel submitted a claim to Farmers.  Farmers paid Kentzel for the claim, but not Date Street.

¶5        In August 2022, Date Street filed this action in the superior court against various defendants, later amending its complaint so Farmers

---

[1] The Policy emphasizes defined terms in bold.  We reproduce the Policy's language without that emphasis.

was the only defendant. Date Street sought declaratory relief as to "its rights and interests" under the Policy. While Date Street raised four other claims sounding in contract, these claims all reiterate Date Street's claim for declaratory relief, as it conceded at argument in this Court. Date Street did not attach the Policy to its original or amended complaints.

**¶6** Farmers moved to dismiss under Rule 12(b)(6) for failure to state a claim, attaching the Policy to its motion. After argument, the superior court granted Farmers' motion because the Policy did not create an independent relationship between Date Street and Farmers, thus limiting Date Street's ability to claim a breach of contract.

**¶7** Date Street timely appealed. We have jurisdiction. Ariz. Const. art. 6, § 9; A.R.S. §§ 12-120.21(A)(1), -2101(A)(1).

## DISCUSSION

**¶8** We review de novo dismissals under Rule 12(b)(6). *Coleman v. City of Mesa*, 230 Ariz. 352, 355 ¶ 7 (2012). We assume "the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts, but mere conclusory statements are insufficient." *Id.* at 356 ¶ 9 (citation omitted).

**¶9** We generally do not consider material outside of the pleadings without converting a motion to dismiss to a motion for summary judgment. *Id.* But exhibits attached to a complaint are part of the pleading and may therefore be considered on a motion to dismiss. *Id.* Here, the Policy was not attached to the amended complaint and was not of record until Farmers attached it to its motion to dismiss. We nevertheless consider the Policy for two reasons. First, it is central to the complaint. *See Date Street Cap., LLC v. Clearcover Ins. Co.*, 256 Ariz. 430, 434 ¶ 9 (App. 2023) ("[M]aterials that, although not appended to the complaint, are central to the complaint may be considered without conversion." (cleaned up)). Second, Date Street does not object to the consideration of it, thus waiving any issue. *See Moretto v. Samaritan Health Sys.*, 190 Ariz. 343, 346 (App. 1997) (holding that failure to raise claims of "procedural irregularities" in the superior court waives the claims on appeal).

I.      **Date Street Has Standing to Request Declaratory Relief as to Its Rights Under the Policy, and the Statutory Right to Do So.**

      A.      **Date Street's Claim of a Distinct Injury Gives It Standing.**

**¶10**      We first consider Farmers' claim that Date Street lacks standing.  To establish standing, a plaintiff must show "a particularized injury to themselves." *Advanced Prop. Tax Liens, Inc. v. Othon*, 255 Ariz. 60, 63 ¶ 18 (2023) (quoting *Bennett v. Brownlow*, 211 Ariz. 193, 196 ¶ 17 (2005)); *Sears v. Hull*, 192 Ariz. 65, 69 ¶ 16 (1998) ("To gain standing to bring an action, a plaintiff must allege a distinct and palpable injury." (citation omitted)).

**¶11**      Date Street alleges a distinct injury.  It alleges the Dodge is collateral in which Date Street has an interest under its agreement with Kentzel.  Date Street alleges it should have received compensation for the loss in value to its collateral. We treat these allegations as true. *See Coleman*, 230 Ariz. at 356 ¶ 9.  Date Street thus has standing.

      B.      **Arizona's Uniform Declaratory Judgments Act Allows Parties Thus Aggrieved to Seek Declaratory Judgments.**

**¶12**      Arizona's Uniform Declaratory Judgments Act empowers courts "to declare rights, status, and other legal relations whether or not further relief is or could be claimed."  A.R.S. § 12-1831.  Any person who is interested or whose rights are affected under a written contract "may have determined any question of construction or validity arising under the . . . contract . . . and obtain a declaration of rights, status or other legal relations thereunder."  A.R.S. § 12-1832.  As the holder of a lien on collateral covered under the Policy, Date Street's rights under the Policy are affected.  Thus, Date Street is entitled to obtain a declaration of its rights.  *See id.*

II.     **Though Farmers Did Not Make Payment Consistent with the Policy's Loss-Payable Provision, Date Street Does Not Have a Right to Enforce the Policy.**

      A.      **Farmers Failed to Make Payment Consistent with the Policy's Loss-Payable Provision.**

**¶13**      The interpretation of an insurance policy is a question of law we evaluate de novo. *Nichols v. State Farm Fire & Cas. Co.*, 175 Ariz. 354, 355 (App. 1993).  We construe insurance policy provisions according to their plain and ordinary meaning. *Cal. Cas. Ins. Co. v. Am. Fam. Mut. Ins. Co.*, 208 Ariz. 416, 418 ¶ 5 (App. 2004).

**¶14** Here, the policy's loss-payable clause provides, "[i]t is agreed that at our option, any payment for damage to the car listed in this policy shall be paid as interest may appear to the named insured and the lienholder shown on the Declarations Page, or through the repair of the damaged car." Based on its plain and ordinary meaning, this clause gives Farmers two options for payments in the event of a loss. First, Farmers can issue payment to both the named insured, Kentzel, and the lienholder, Date Street, in proportion to their interests. Alternatively, the Policy allows Farmers to pay vendors directly for repairs. After Kentzel submitted a claim, Farmers elected neither option, instead paying Kentzel alone. Based on the well pled factual allegations in the amended complaint, which we take as true as we evaluate the motion to dismiss, *see Coleman*, 230 Ariz. at 356 ¶ 9, Farmers did not comply with the Policy.

**¶15** But determining Farmers' non-compliance, standing alone, does not resolve this case. Date Street still needs to establish a right to enforce the Policy as a lienholder—and under Arizona law, it lacks such a right.

### B. Date Street Cannot Enforce the Terms of the Policy Because the Loss-Payable Clause Is "Simple."

**¶16** We construe insurance contracts "to ascertain and enforce the intent of the parties." *Clearcover*, 256 Ariz. at 435 ¶ 16 (cleaned up). "[A]n insurance policy may be interpreted as assigning its benefits to a lienholder, either through express language in the policy or through the acts of the parties, under general principles of equity." *Id.* (citation omitted). The validity of a lienholder's legal interest in the matter turns on the loss-payable language contained in the insurance policy. *Id.* at 437 ¶ 21.

**¶17** Loss-payable clauses in an insurance policy are typically called either "standard" or "simple." *Id.* at 435 ¶ 17. A *standard* loss-payable clause directly assigns contractual rights to a lienholder, "thereby insulating said lienholder from wrongdoing by the insured that would otherwise invalidate the insurance contract." *Id.* (footnote and citations omitted). "[A] loss payee properly named in a standard loss-payable mortgage clause is entitled to collect under an automobile insurance policy, notwithstanding a misrepresentation by the applicant at the inception of the contract." *Id.* at 436 ¶ 18.

**¶18** By contrast, a *simple* loss-payable clause "is less protective of a lienholder's rights, which are fully derivative of the insured's rights." *Id.* at 435 ¶ 17 n.1 (citations omitted); *see also Valley Nat. Bank of Ariz. v. Ins. Co.*

*of N. Am.*, 172 Ariz. 212, 215 (App. 1992). In *Clearcover*, this Court defined simple loss-payable clauses and distinguished those clauses from standard clauses. 256 Ariz. at 435 ¶ 17 n.1. But this Court stopped short of explicitly determining that a loss payee named in a simple loss-payable clause is not entitled to enforce the policy because *Clearcover* dealt exclusively with a standard loss-payable clause. We conclude today that a loss payee named in a simple loss-payable clause is not entitled to the same enforcement and recovery rights as afforded to loss payees in standard loss-payable clauses.

**¶19** Here, the superior court ruled, and Date Street concedes, that the loss-payable clause in this case is simple, not standard. By conceding the loss-payable clause is simple, Date Street admits its rights derive entirely from the insured's rights. *See id.* This conclusion is consistent with the remainder of the Policy. Nothing in the Policy suggests the parties intended that Date Street's rights be insulated from any potential wrongful acts of the insured, underscoring that Date Street has no rights beyond Kentzel's. *See id.* at 435 ¶ 17. Date Street thus fails to show that Farmers had an independent contractual relationship with Date Street separate from Farmers' obligations to its insured. Because Date Street's rights are derivative of Kentzel's, Date Street has no independent claim of its own and cannot enforce the Policy against Farmers.

### C. Date Street Is Not a Third-Party Beneficiary Entitled to Enforce the Policy.

**¶20** Although Date Street has no independent right to enforce the Policy, Date Street also claims it is a third-party beneficiary of the Policy. Farmers disagrees, arguing "the mere fact of being named as a lienholder in a simple loss-payable clause in an insurance policy does not transform a lienholder into a third-party beneficiary." We again agree with Farmers.

**¶21** To recover as a third-party beneficiary, "the contracting parties must intend to directly benefit that person and must indicate that intention in the contract itself." *Sherman v. First Am. Title Ins. Co.*, 201 Ariz. 564, 567 ¶ 6 (App. 2002) (citations omitted). "[I]t is not enough that the contract may operate to his benefit but it must appear that the parties intended to recognize him as the *primary* party in interest and as privy to the promise." *Id.* (quoting *Basurto v. Utah Constr. & Mining Co.*, 15 Ariz. App. 35, 39 (1971) (footnote omitted)).

**¶22** We agree Date Street's status as lienholder does not make it a third-party beneficiary. Nothing in the Policy shows that Farmers and the Kentzels – both parties to the contract – intended Date Street to be the (or a)

primary party in interest to the contract. To the contrary, Date Street admits the loss-payable provision clause is a simple clause, which "is less protective of a lienholder's rights, which are fully derivative of the insured's rights." *Clearcover*, 256 Ariz. at 435 ¶ 17 n.1 (citations omitted). For this reason too, dismissal under Rule 12(b)(6) is appropriate.

## CONCLUSION

**¶23** For the foregoing reasons, we affirm. Farmers requests its attorneys' fees under A.R.S. § 12-341.01 and costs incurred on appeal, while Date Street requests an order that on remand it could be entitled to its appellate attorneys' fees. In our discretion, we decline both parties' fee requests, but award Farmers its costs, subject to its compliance with ARCAP 21.



MATTHEW J. MARTIN • Clerk of the Court
**FILED**:          JR